In the Matter of Dilman CARTER & Janet Carter d/b/a Spuds N Suds.

M. Scott MICHEL, United States Trustee, Appellant,

v.

Dilman CARTER & Janet Carter d/b/a Spuds N Suds, Appellees.

Bankruptcy No. 89–00642 MDM.
Civ. A. No. 89–C–809.

United States District Court,
E.D. Wisconsin.

June 22, 1990.

Michael C. Williams, Office of the U.S. Trustee, Milwaukee, Wis., for appellant.

R. Arthur Ludwig, Ludwig & Shlimovitz, Milwaukee, Wis., for appellees.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### FACTS

On February 10, 1989, the debtors, Dilman and Janet Carter ("the Carters"), filed a voluntary bankruptcy petition with the United States Bankruptcy Court in the Eastern District of Wisconsin under the provisions of Title 11 of the United States Code. On February 28, 1989, the Carters filed an application and proposed order with the bankruptcy court requesting that Ludwig & Shlimovitz, S.C. ("Ludwig") be appointed as attorney for the debtor-in-possession (the Carters) under Title 11 U.S.C. § 327(a).

The United States Trustee ("the Trustee") objected to Ludwig being appointed because he claimed Ludwig did not fulfill the requirements of 11 U.S.C. § 327(a). This section states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee ...

(1989). Specifically, the Trustee claimed that Ludwig was an interested person and therefore disqualified. The Trustee argued that Ludwig was an interested person because on February 10, 1989, at 11:40 a.m., approximately five (5) hours prior to the

filing of the Carters' bankruptcy petition, Ludwig received and recorded an assignment of the Carters' interest in a land contract. This assignment was made as collateral for payment of the legal services Ludwig would provide to the Carters during the bankruptcy proceedings.

On May 24, 1989, 101 B.R. 563, the bankruptcy court entered its findings of fact and conclusions of law which held that Ludwig was a "disinterested person" and did not hold an interest adverse to the estate within the meaning of § 327(a); and, on June 6, 1989, the bankruptcy court entered an order authorizing the Carters to retain Ludwig. In addition, in the May 24, 1989 order, the bankruptcy court held that the assignment of the Carters' interest in the land contract to Ludwig would be available for payment of all administrative expenses, not solely for the payment of Ludwig.

On July 5, 1989, the Trustee filed with this court an appeal of the bankruptcy court's June 6, 1989 order. This court has appellate jurisdiction to hear the Trustee's interlocutory appeal pursuant to Title 28 U.S.C. § 158(a). On appeal, the Trustee has reiterated his argument that Ludwig should be disqualified from representing the Carters because it has a security interest in a land contract owned by the Carters thereby rendering it an interested party. The reasoning and holding of the bankruptcy court, however, is persuasive, and this court affirms the bankruptcy court's decision to permit Ludwig to represent the Carters.

## ANALYSIS

The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review by this court, and its conclusions of law are subject to de novo review. *In re Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984).

Title 11 § 327(a) permits an attorney to represent a debtor as long as the attorney (1) is a "disinterested person" and (2) holds no interest adverse to the estate. These two restrictions are similar as seen by the Bankruptcy Code's ("the Code") definition for a disinterested person which requires that such a person not hold an interest adverse to the estate. 11 U.S.C. § 101(13)(E). The Code defines a disinterested person as a person that:

(A) is not a creditor, an equity security holder, or an insider;

. . . .

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

11 U.S.C. § 101(13).

■ The Trustee argues that Ludwig is not a disinterested person because it became a creditor of the estate as a result of the pre-petition assignment of the interest in the Carters' land contract. The Code defines creditor as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(9)(A). In addition, the Code defines claim as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(4)(A).

The bankruptcy court held that Ludwig was not a creditor to the estate because the assignment did not create a right to payment from the estate. The court reasoned that Ludwig's right to payment was created by the legal services it performed after the petition was filed, not the mere filing of the assignment. The Trustee, on the other hand, argues that the filing of the assignment created an unmatured claim, and therefore Ludwig was a creditor of the Carters when they filed their bankruptcy petition.

The Code's definition of claim expressly includes a right to payment that is contingent. 11 U.S.C. § 101(4). In the present case, Ludwig's right to payment was contingent upon its performing legal services

for the Carters during the bankruptcy proceedings. Ludwig's contingent right to payment arose when it filed the assignment which was approximately five (5) hours prior to the filing of the bankruptcy petition. Thus, at the time the bankruptcy petition was filed, Ludwig was a creditor, as defined by the Code, of the Carters and the bankruptcy court's holding to the contrary is overruled.

█ The Trustee claims that once an attorney is determined to be a creditor as defined by the Code, he or she is automatically disqualified by § 327(a) from representing the debtors. The Trustee essentially argues that a per se rule should exist which disqualifies any attorney who takes a security interest in the debtor's property to secure payment of future services. There is a split within the federal circuits on the validity of this type of per se rule, and the Seventh Circuit has yet to rule on the issue.

The Eighth Circuit in *In re Pierce* adopted the per se rule that is advocated by the Trustee. 809 F.2d 1356, 1362–63 (8th Cir.1987). The attorney in *Pierce* argued that the statutory language disqualifying an attorney who is a creditor under the Code should not be applied blindly, and that the test for disinterestedness should be whether or not the attorney possesses an interest that would prejudice his independent judgment and impartiality. *Id.* at 1362. Although the court of appeals recognized that the attorney's argument was meritorious, it held that:

> [T]he intent of the statute is clear; if a professional is a creditor, then that person is not disinterested under 11 U.S.C. § 101(13) and is subject to disqualification under Section 327(a). As this court recently noted, the professional's complaint in this area lies with Congress, not the courts.

*Id.* at 1362–63 (referring to *In re Daig Corp.*, 799 F.2d 1251, 1253 n. 5 (8th Cir. 1986), *aff'g,* 48 B.R. 121 (Bankr.D.Minn. 1985)).

The First Circuit in *In re Martin,* however, refused to adopt such a per se rule. 817 F.2d 175, 183 (1st Cir.1987). The First Circuit recognized the tension between (1) the business reality that an attorney has a financial interest in the bankruptcy proceedings because he needs to get paid and (2) the legal reality that § 327(a) would become meaningless if bankruptcy counsel were unrestrained in setting aside for themselves the most valuable assets of an estate as a precondition of employment. *Id.* at 181. The court stated that reason required that a balance between these two competing interests be struck and held:

> Thus, faithful to our view of Congress's intent and to the "overriding consideration that equitable principals govern the exercise of bankruptcy jurisdiction," we eschew the affixation of pejorative labels to the kind of mortgage arrangement entered into between the debtors and V & D [the law firm]. We are not prepared to say across the board that a retainer of this type is good—or bad—in every instance.

*Id.* The court then enunciated numerous factors that a bankruptcy court judge should consider when determining whether or not an attorney was a disinterested person within the meaning of § 327(a) and concluded that "each situation must be judged prospectively on its own merits." *Id.* at 183.

The First Circuit's holding in *Martin* is persuasive and this court holds that a person who fits the Code's definition of "creditor" is not per se an interested person. In addition, this court fully agrees with the First Circuit's assessment that:

> The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision [whether or not the attorney is disinterested] entails. If he perceives a materially adverse interest, he has at his disposal an armamentarium of permissible remedies, including (but by no means limited to) disqualification, disallowance of all or some fees, and invalidation of the security interest.

*Id.* at 182–83.

█ This court holds that the determination of whether or not an attorney is a

disinterested person within the meaning of § 327(a) is to be made by the bankruptcy court on a case-by-case basis. The bankruptcy court should look into the specifics surrounding the attorney's security interest in the estate to determine if the interest is truly adverse to either the estate or the creditors. The factors the bankruptcy court should consider in making its determination are virtually unlimited and include those identified by the First Circuit:

1. the reasonableness of the arrangement;

2. whether it was negotiated in good faith;

3. whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services;

4. whether it was a needed means of ensuring the engagement of competent counsel;

5. whether or not there are signs of overreaching;

6. the nature and extent of any conflict of interest;

7. the likelihood that a potential conflict might turn into an actual one;

8. whether or not the potential conflict may influence the attorney's subsequent decision making;

9. the appearance of the arrangement to other parties of interest;

10. whether the existence of the security interest threatens to hinder or delay the effectuation of a plan;

11. whether the security is or could be perceived as an impediment to reorganization; and

12. whether fundamental fairness might be unduly jeopardized. *Martin*, 817 F.2d at 182.

■ In the present case, the bankruptcy court considered the factors outlined by the First Circuit in *Martin* and concluded that:

> There is no indication that the existence of this security interest will delay or impair the debtors' reorganization of their finances. There is no indication that the arrangement was made other

than in good faith, and the amount secured appears to be appropriate for the services anticipated to be rendered. Full disclosure was made at the inception of the case. The court is unable to envision a scenario in which the attorneys' interest in the land contract receivable would be or would appear to be adverse to the estate or to any creditor. The court is satisfied that the arrangement, except as modified herein, is in the debtors' best interest.

(101 B.R. at 565–566). In addition, to ensure that any potential conflict with other administrative claimants would be avoided, the bankruptcy court held that the assignment of the interest in the Carters' land contract will be available for payment of all the administration expenses, not solely those of Ludwig. This court holds that the bankruptcy court utilized the proper legal standard for determining if Ludwig was a disinterested person within the meaning of § 327(a) and that its findings of fact, other than its finding that Ludwig was not a creditor, are not clearly erroneous.

IT IS THEREFORE ORDERED that the bankruptcy court order of June 6, 1989, authorizing the appointment of Ludwig & Shlimovitz, S.C. as attorney for the debtors-in-possession, Dilman and Janet Carter, is AFFIRMED.