**In re BELKNAP, INC., Debtor.**

**Bankruptcy 3–85–03059.**

United States Bankruptcy Court,
W.D. Kentucky.

Jan. 31, 1989.

See also, Bkrtcy., 96 B.R. 108.

Tandy C. Patrick and Michael G. Shaikun, Louisville, Ky., for debtor-in-possession.

Ronald R. Peterson, Chicago, Ill., Jeremiah A. Lloyd and Gerald F. McDaniel, Louisville, Ky., for Official Unsecured Creditors' Committee.

## MEMORANDUM OPINION

J. WENDELL ROBERTS, Chief Judge.

This Chapter 11 case is before the court for consideration of interim applications for compensation for professional services rendered and for accompanying reimbursement of necessary expenses, filed by three law firms and a consulting firm, pursuant to the provisions of 11 U.S.C. §§ 330 and 331 and Fed.R.Bankr.Pro. 2016. The law firms of Lloyd and McDaniel, which has requested fees and expenses totalling $499,162.32 and Jenner and Block, which now seeks the sum of $201,947.76, have performed substantial services on behalf of the Official Unsecured Creditors' Committee as appointed in this case; the law firm of Greenebaum, Doll and McDonald is duly-appointed legal counsel for the debtor-in-possession, and now applies for compensation totalling $82,891. Peterson and Company is a New York consulting and accounting firm which has provided services on behalf of the Unsecured Creditors' Committee. Peterson and Company currently seeks fees and expenses of $179,439. All of the instant applications were noticed for objections in accordance with Fed.R.Bankr. Pro. 2002(a)(7). No objections to any of the applications were filed with the court.

However, following review of these applications, this court, *sua sponte*, scheduled and conducted a hearing on December 14, 1988 to provide the applicants an opportunity to substantiate their large administrative claims. Following the hearing this court, by order entered December 15, 1988, awarded the applicants 75 percent of the fees requested. This step was taken as an accommodation and was made subject to further review, to enable the applicants to receive the major part of their fees and expenses during the 1988 tax year, thereby avoiding possible adverse tax consequences which could have resulted had payment been delayed until 1989.

This case is one of the largest, if not the largest bankruptcy case on record in this district. A complex plan of liquidation was confirmed by the late Judge G. William Brown on December 12, 1986; it has not been necessary to appoint a trustee in this case. Pursuant to the confirmed plan of liquidation, over 1800 objections to claims have been filed and adversary proceedings totalling in excess of 650 were commenced.

11 U.S.C. § 330 requires the court allow only "... reasonable compensation for actual, necessary services ..." rendered by professionals in connection with a bankruptcy case. Accordingly it is the responsibility of the bankruptcy judge to protect the public interest by overseeing the award of professional fees in accordance with the bankruptcy code, even in the absence of objection by a party in interest. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.D.Vt.1987); *In re Cuisine Magazine, Inc.*, 61 B.R. 210 (Bankr.S.D.N.Y. 1986).

Because the bankruptcy code allows for an award of "reasonable" fees, we begin our analysis of the fees requested with a brief review of the law regarding the process by which such reasonableness is determined. The Supreme Court, in a case of relatively recent vintage announced what is now the standard for determining reasonable fees in a non-bankruptcy context. That case, *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)

adopts what has commonly been referred to as the "lodestar" method. "Lodestar" is determined by multiplying the number of hours spent on a case times a reasonable hourly rate of compensation for each attorney involved. In arriving at reasonableness under this formula, 12 factors are considered. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974). Once these factors are considered and a lodestar figure determined, the resulting product is strongly presumed to be the reasonable fee to which counsel is entitled. Modification of the "lodestar" figure will be made only in exceptional circumstances, where supported by specific evidence and detailed findings of the awarding court. *Delaware Valley*, 106 S.Ct. at 3098.

As we consider the fees requested in the instant applications against the legal standards set forth above, we note that we do not begin our inquiry with a clean slate. Unfortunately for all concerned, Judge Brown, who ably presided over the vast majority of the activity, which is now the subject of these applications, is no longer with us. He would have been in the best position to evaluate reasonableness of the fees requested in light of *Johnson* and *Delaware Valley*. In addition, it was Judge Brown who, based upon his long-standing familiarity with the case, had approved the fees requested in previous interim applications.

Our review of the testimony and the arguments of counsel convinces us, how-

ever, that the hourly rates and the number of hours expended by the applicants herein are, indeed, reasonable. The record shows that almost $25,000,000 has been recovered for the estate thus far and that a substantial dividend, approximately 35–40 percent, will be paid to unsecured creditors. This dividend is undeniably the result of the efforts expended by these applicants. Had this case been administered under Chapter 7, with a trustee appointed, the distribution to unsecureds would have been much less.

We would like to point out, however, that this court's approval of fees in these particular applications should not be construed as a basis for rates which will be allowed in the future. It is our position that all fee applications will be reviewed on a case by case basis in light of the factors cited herein. The complexity of the issues involved may vary within a case so that the appropriate level of compensation may also vary.

The applications of the three law firms indicate that clerical pay is being billed to the estate. Of particular concern is the application of Lloyd and McDaniel which discloses that employees designated as Paralegals and Legal Assistants were actually performing clerical functions in posting deposits, filing and running errands. Compensation from $30 to $50 per hour has been requested for these services. Jenner and Block's application includes billing for clerical services, although it appears that the hours billed for paralegal services reflect performance of bona fide paralegal duties. A review of the specific charges billed by Greenebaum, Doll and McDonald for two Legal Assistants also reflects that these individuals were, in fact, performing clerical services.

■ Clerical pay is considered a part of overhead and may not properly be billed to the estate. *Matter of Pothoven*, 84 B.R. 579 (Bankr.S.D.Iowa 1988). Overhead costs are taken into account when customary hourly rates for attorneys are determined. *In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987). Accordingly the following services having been determined to be clerical in nature, will be disallowed as follows:

### LLOYD AND MCDANIEL

| | |
|---|---:|
| Beverly Haverstock, Paralegal | $ 520.00 |
| Donald Neighbors, Legal Assistant | $ 3,472.00 |
| Joe Goodman, Legal Assistant | $28,525.00 |
| W. Shelby Simpson, Paralegal | $ 1,881.00 |
| **Total** | **$34,398.00** |

### GREENEBAUM, DOLL AND MCDONALD

| | |
|---|---:|
| Angela Nexman, Legal Assistant | $ 96.00 |
| Jim Keairns, Legal Assistant | $ 474.00 |
| **Total** | **$ 570.00** |

### JENNER AND BLOCK

| | |
|---|---:|
| Gail M. Lodygowski, Clerical | $ 1,730.00 |
| Annabelle McDonald, Clerical | $ 4,462.00 |
| Gerald Nall, Clerical | $ 1,700.00 |
| Paul T. Cahill, Clerical | $ 737.50 |
| Elizabeth D. Gaunt, Clerical | $ 1,168.75 |
| Donna J. Kolodgieg, Clerical | $ 18.75 |
| Rosie Wilson, Clerical | $ 250.00 |
| Caryn Reid, Clerical | $ 12.50 |
| Joseph S. Adams, Clerical | $ 631.25 |
| Lisa H. Milles, Clerical | $ 512.00 |
| **Total** | **$ 8,322.65** |

Jenner and Block has requested $1500 as reimbursement for computer legal research. Like clerical expenses, computer legal research is a cost of overhead for which an attorney may not be additionally compensated from the estate. *Pothoven*, at 586. Accordingly, this expense will be disallowed.

■ The application of Lloyd and McDaniel includes a "surcharge" of three percent of its hourly rate, which is used to cover long distance telephone charges and photocopying expense. Although we have no doubt that such charges were incurred by Lloyd and McDaniel, and although such charges are properly subject to reimbursement as expenses under 11 U.S.C. § 330, subsection (a)(2) clearly provides that only "actual and necessary" expenses may be considered. Fed.R.Bankr.Pro. 2016 further requires a "detailed statement" of the charges incurred. As the "surcharge" asserted does not comply with the requirements as set forth above, the amount requested, $14,258.82, must be disallowed. Realizing the harsh impact that our ruling on this issue may occasion, this court will not hesitate to reconsider any subsequent

request for the disallowed expenses upon receipt of a properly itemized statement from the applicant.

This court recognizes that issues attendant to the award of professional fees are of a sensitive nature. We recognize further that there is a need for relative certainty in the evaluation of such awards. Because of these considerations we issue the following guidelines for reference in subsequent fee and expense applications.

1. Each fee application shall contain brief bibliographies of all persons employed as professionals;

2. Professionals and paraprofessionals should be utilized in such a way as to minimize the cost to the estate. Senior partners should not perform services which could be as competently performed by associates or paralegals; paralegals should not be used to perform tasks which are clerical in nature.

3. Out of state firms shall include proof of customary fees in their local legal community, including customary fees charged by paraprofessionals;

4. Overhead expenses shall not be included in fee applications;

5. All fee applications shall, in brief form, apply the "lodestar" factoring analysis as restated herein to provide justification that the fees requested are reasonable and necessary.

An order consistent with the views expressed herein will be entered this day.

## ORDER

Pursuant to the attached memorandum opinion,

IT IS ORDERED that the law firm of Greenebaum, Doll and McDonald be, and it hereby is, awarded the sum of $77,459.00 for its professional services, and the sum of $4,862.01 as reimbursement for actual, reasonable and necessary expenses incurred from October 1, 1987 to and including August 31, 1988.

IT IS FURTHER ORDERED that the sums of $58,521.75 and $4,462.01 be deducted from the professional fees and expenses, respectively, set forth above as these have already been paid by the debtor's estate pursuant to this court's order of December 15, 1988. Accordingly the net amount now due Greenebaum Doll and McDonald for fees and expenses from October 1, 1987 to and including August 31, 1988 is $18,937.25.

IT IS FURTHER ORDERED that the law firm of Jenner and Block be, and it hereby is, awarded the sum of $169,171.10 for its professional services, and the sum of $24,454.01 as reimbursement for actual, reasonable and necessary expenses incurred from September 1, 1987 to and including September 30, 1988.

IT IS FURTHER ORDERED that the sums of $133,120.31 and $24,454.01 be deducted from the professional fees and expenses, respectively, set forth above as these have already been paid by the debtor's estate pursuant to this court's order of December 15, 1988. Accordingly the net amount now due Jenner and Block for fees and expenses from September 1, 1987 to and including September 30, 1988 is $36,050.79.

IT IS FURTHER ORDERED that the law firm of Lloyd and McDaniel be, and it hereby is, awarded the sum of $440,896.05 for its professional services and $9609.47 as reimbursement for its actual, reasonable and necessary expenses incurred from August 31, 1987 to and including August 31, 1988.

IT IS FURTHER ORDERED that the sum of $356,470.53 be deducted from the professional fees awarded set forth above as this amount represents compensation already paid from the debtor's estate pursuant to this court's order of December 15, 1988.

IT IS FURTHER ORDERED that the sum of $14,258.82 also be deducted from the remaining award of professional fees, as this sum represents "surcharge" funds awarded, but subsequently disallowed, as actual, reasonable and necessary expenses. Accordingly, the net amount now due the law firm of Lloyd and McDaniel for its professional services and expenses from August 31, 1987 to and including August 31, 1988 is $70,166.70. As previously noted

herein, "surcharge" expenses are subject to reconsideration upon tender of a properly itemized statement of actual expenses which complies with 11 U.S.C. §§ 330 and 331 and Fed.R.Bankr.Pro. 2016.

IT IS FURTHER ORDERED that the accounting firm of Peterson and Company Consulting be, and it hereby is, awarded the sum of $149,740.00 for its professional services and the sum of $29,699.00 as reimbursement for actual, reasonable and necessary expenses, from July 15, 1987 to and including July 15, 1988.

IT IS FINALLY ORDERED that the sum of $112,305.00 be deducted from the professional fees awarded set forth above as this amount represents compensation already paid from the debtor's estate pursuant to this court's order of December 15, 1988. Accordingly the net amount now due the accounting firm of Peterson and Company Consulting for its professional services and expenses from July 15, 1987 to and including July 15, 1988 is $37,435.00.

This is a final and appealable order and there is no just cause for delay.