**In re Roy E. ATWELL, Starla R. Atwell, Debtors.**

**Bankruptcy No. 92–30215(3)13.**

United States Bankruptcy Court, W.D. Kentucky.

Jan. 5, 1993.

Neil C. Bordy, Louisville, KY, for debtors.

William W. Lawrence, Louisville, KY, Chapter 13 Trustee.

Joseph J. Golden, Asst. U.S. Trustee.

## MEMORANDUM OPINION

HENRY H. DICKINSON, Bankruptcy Judge.

The subject of awards of attorney fees is perhaps the "most delicate" issue which a Bankruptcy Court must consider. *See In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842 (Bkrtcy.W.D.Ky.1983). This matter is before the Court along with several other Chapter 13 fee applications as a result of the Sixth Circuit's remand of *In re Boddy*, 950 F.2d 334 (6th Cir.1991) to this Court for consideration of an award of a Chapter 13 fee request under the "lodestar" standard of *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).[1] In this opinion we will articulate guidelines under lodestar for the award of fees in Chapter 13 cases.

## LEGAL DISCUSSION

### I. *Procedure for Future Chapter 13 Applications*

■ As noted by the Sixth Circuit in *Boddy*, Bankruptcy Courts may not arbitrarily impose flat fee limitations on debtor's counsel in bankruptcy proceedings. *Boddy*, 950 F.2d at 338. *See also In re Paster*, 119 B.R. 468, 470 (E.D.Pa.1990). However it has been widely noted that in consumer bankruptcy cases some guidelines concerning fees may be established to prevent Bankruptcy Courts from being overwhelmed by hearings on Chapter 13 fee applications. *See* 11 U.S.C. § 330 ("after notice ... and a hearing ... the Court may award ... the debtor's attorney (1) reasonable compensation for actual necessary services rendered ... and (2) reimbursement for actual necessary expenses") *See also In re McClanahan*, 137 B.R. 73 (Bkrtcy.M.D.Fla.1992) (discussion of flat fees and reduction of excessive flat fee); *In re Fricker*, 131 B.R. 932 (Bkrtcy. E.D.Pa.1991) (fee application requirements in Chapter 13); *In re Bush*, 131 B.R. 364 (Bkrtcy.W.D.Mich.1991) (court has duty to review fees even when no objection raised by any party, nature of Chapter 13 practice discussed); *In re Patronek*, 121 B.R. 728 (Bkrtcy.E.D.Pa.1990) (guidelines needed to prevent rubber stamping, general guidelines discussed); *In re Lanigan and Nailing*, 101 B.R. 530 (Bkrtcy.N.D.Ill.1986) (procedures relating to payment of Chapter 13 attorney fees); *In re Taylor*, 100 B.R. 42 (Bkrtcy.D.Col.1989) (procedures relating to awards of Chapter 13 attorney fees).

Therefore, in the interest of clarifying and codifying the practice of this Court concerning Chapter 13 cases consistent with the guidelines setforth by the Sixth Circuit in *Boddy* this Court adopts the following procedure for all future Chapter 13 debtor's attorney fee applications.

■ In all Chapter 13 cases filed after January 1, 1993 the debtor's attorney shall elect, by no later than the hearing on the confirmation of the Chapter 13 plan, to either accept a flat fee awarded by this Court not to exceed $875.00 for all legal expenses incurred and/or to be performed for the debtor between the filing of the Chapter 13 petition and the filing of the statement of allowed claims, or to request compensation on an hourly basis. This Court shall annually review the question of average Chapter 13 awards to determine if the $875.00 flat fee award should be adjusted. Counsel who accept a flat fee may still file an application for additional attorney fees, if their employment agreement with the debtor so allows, for any additional legal fees and expenses incurred after the filing of the schedule of allowed claims.

In the event an attorney elects to accept a flat fee awarded by the Court in the amount of $875.00 or less, and no objection to the flat fee is made by any party in interest prior to the confirmation hearing, then the debtor's counsel shall not be required to file a fee application.

However if the debtor's counsel either elects not to accept the flat fee awarded by this Court at the hearing on confirmation or wishes to request more than $875.00 in

---

**1.** The case of *In re Boddy* never came before the Court for reconsideration since it was dismissed

prior to our review of the fee application.

legal fees and expenses, then that attorney shall make that election prior to or at the hearing on confirmation of the Chapter 13 plan and must then make a fee application under the guidelines of *In re J.F. Wagner's Sons Co.*, 135 B.R. 264 (Bkrtcy.W.D.Ky. 1991); *In re Belknap*, 103 B.R. 842 (Bkrtcy.W.D.Ky.1989) and this opinion for an award of fees.

In the notice of the first meeting of creditors issued by this Court, all creditors shall be informed that this Court has the discretion to award attorney fees and expenses of $875.00 or less to counsel for the debtor in a Chapter 13 case without debtor's counsel being required to file a detailed fee application or any further notice and hearing.

As noted above, this procedure allows the Court to review all Chapter 13 fee awards without requiring debtor's counsel to prepare detailed fee requests in every case. If any party in interest wishes to object to a flat fee award under this procedure a full fee application shall be prepared by debtor's counsel and a hearing held on the matter. This Court has determined from a Lodestar analysis of the numerous Chapter 13 cases before it that currently in an average uncomplicated Chapter 13 bankruptcy the reasonable compensation for actual and necessary services rendered is approximately $875.00, based on 9–10 hours of reasonable hours expended at a reasonable billing rate of between $85.00 and $100.00. This Court has determined that absent any objection, that a detailed review of Chapter 13 fee applications in this amount or less is generally unwarranted. Unlike the $650.00 flat fee discussed in *Boddy,* this award is not an established fixed fee which circumvents the meaning of 11 U.S.C. § 330, *See Boddy*, 950 F.2d at 337 but is rather an exercise of judicial discretion designed to prevent unnecessary fee applications and hearings in the majority of Chapter 13 cases.

## II. *Standard for Evaluating Lodestar Fee Awards*

■ The Lodestar method of determining an award of attorney fees involves "multiplying the attorney's *reasonable hourly rate* by the number of *hours reasonably expended.*" *In re Boddy*, 950 F.2d at 337. [emphasis added] This method of determining fees under 11 U.S.C. § 330 applies with equal force in Chapter 7, 11, 12 and 13 cases. *In re Reed*, 890 F.2d 104 (8th Cir.1989); *Matter of Malewicki*, 142 B.R. 353 (Bkrtcy.D.Neb.1992).

While the Lodestar standard is easy to articulate, defining its two key terms is not so simple. As one team of commentators noted:

> Judges appear generally reluctant to exercise too broadly their discretion to determine "reasonable compensation." Most opinions are written as explanations of how the final figure was reached, but some, particularly those using the global-reduction method, are probably post hoc attempts to quantify gut feelings.

*Sally and Rochland,* Survey of Sixth Circuit Decisions on the "Calculation of a Reasonable Fee", 1991 Annual Survey of Bankruptcy Law 367 (1991).

This Court in *In re Belknap*, 103 B.R. 842 (Bkrtcy.W.D.Ky.1989) stated that 12 factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), should be considered in determining reasonable hourly rates and reasonable hours expended under Lodestar. This approach has been approved by the Sixth Circuit in *Boddy* where the Circuit noted that "in many cases these factors will be duplicative if the court first determines the Lodestar amount because the Lodestar presumably subsumed all of these [*Johnson* ] factors in its analysis of the reasonable hourly rate and reasonable hours worked." *In re Boddy*, 950 F.2d at 338.

In light of the Sixth Circuit's comments concerning the components of a Lodestar award this Court shall attempt to set forth what factors are most important in: 1) determining reasonable hourly rates; 2) reasonable hours expended; and 3) global modifications to lodestar awards.

### A.) Reasonable Hourly Rates

#### 1) *Experience of the Attorney/Customary Hourly Rate*

■ The starting point for a court in reviewing the question of reasonable hour-

ly rates is a determination of the debtor's attorney's customary hourly rate charged to similar clients with similar legal difficulties *See* 124 Cong.Rec.H. 11,091–2 (Sept. 28, 1978); S. 17,408 (Oct. 6, 1978) ("the policy [of Section 330 of the Bankruptcy Code] is to compensate attorneys and other professionals serving in a case under a [the Bankruptcy Code] at the same rate as the attorney or other professionals would be compensated for performing comparable services other than in a case under [the Bankruptcy Code]"). *See also In re Associated Grocers of Colorado, Inc.*, 137 B.R. 413 (Bkrtcy.D.Col.1990); *In re CF & I Fabricators of Utah*, 131 B.R. 474 (Bkrtcy. D.Utah 1991). While the customary hourly fee is important to determining the reasonable hourly rate in a Lodestar calculation, it is neither controlling or conclusive. *Associated Grocers*, 137 B.R. at 423. *See also In re McClanahan*, 137 B.R. 73, 75 (Bkrtcy.M.D.Fla.1992) Bankruptcy Courts have the power to review the requested rate to determine whether the attorney's customary charge is reasonable under the circumstances.

### 2) *Comparable Rates*

■ A major factor in determining what is a reasonable hourly rate for purposes of Lodestar is whether the rate charged is comparable to rates charged by comparable attorneys in the local area. *Associated Grocers*, 137 B.R. at 423. However, it is clear that in a case where the complexity, size and/or scope is sufficient to require the participation of counsel from various parts of the country, that the comparison of hourly rates can be made on a national basis. *Id. See also In re Belknap*, 103 B.R. at 842; *In re Seneca Oil Co.*, 65 B.R. 902 (Bkrtcy.W.D.Okla.1986).

The review of comparable rates as a factor in determining reasonable hourly rates is most important in Chapter 13 cases where there is little or no economic incentive for the debtor or any of the debtors creditors to limit attorney fees. *See In re Bush*, 131 B.R. 364 (Bkrtcy.W.D.Mich. 1991); *In re Patronek*, 121 B.R. 728, 731 (Bkrtcy.E.D.Pa.1990). Unlike Chapter 11 and 12 where debtors can keep all monies earned over and above the proposed plan payments and Chapter 7 cases where fees are generally paid by the debtors out of their own funds and not from property of the estate, there is little or no financial incentive for the debtors to negotiate hourly rates and/or attorney fees because Chapter 13 debtors are generally required to pay all their disposable income into the plan. Whether that money ultimately is paid to the debtor's attorney, the prepetition creditors or the Chapter 13 trustee makes no economic difference to the debtor since these payments are no longer available to them. *In re Bush*, 131 B.R. at 365. Further, most claims in Chapter 13 cases are so small that it is cost prohibitive for any creditor to object to the fees requested by the debtor's counsel. *In re Patronek*, 121 B.R. at 731.

■ However, by considering the customary fees of comparable attorneys this Court does not mean to fashion a "standard and customary" fee structure for bankruptcy practitioners. Rather this factor will primarily be used when hourly rates of a particular attorney significantly exceed the typical range for hourly rates requested in *similar bankruptcy cases*. *See In re Spillane*, 884 F.2d 642, 647 (1st Cir.1989). An example of how this factor should be employed is found in *In re McClanahan*, 137 B.R. at 75. There the Bankruptcy Court was confronted by two practitioners requesting fees greatly in excess of that charged by more experienced practitioners in similar consumer Chapter 13 cases. The court reduced the requested hourly rates from the requested $200.00 and $150.00 per hour requested to $175.00 and $135.00 respectively. 137 B.R. at 78.

### 3) *Quality of Legal Services Provided and Skill of Attorney*

■ These factors must be considered by Courts in any determination of reasonable hourly rates since the experience of counsel and the quality of legal services provided are in many ways at the heart of the award of attorney fees under 11 U.S.C. § 330 since the enactment of this particular fee provision was to encourage a

greater number of qualified lawyers to participate in bankruptcy cases. *In re McCombs*, 751 F.2d 286 (8th Cir.1984); *Matter of Malewicki*, 142 B.R. 353 (Bkrtcy. D.Neb.1992). This factor is distinguishable from the "results obtained" factor set forth in *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Circuit 1985) in that it is not dependent upon the return for the debtor or debtor's estate, but instead relates to the intrinsic quality of the legal services and the professionalism of the attorneys in a given case. *See generally In re Novitzke*, 120 B.R. 483, 487 (Bkrtcy.W.D.Wis. 1990).

### 4) *Novelty/Difficulty of Issues Present in Case*

■■■■ In *Boddy* the Sixth Circuit identified "the novelty and difficulty" of issues as a factor to be considered in making an award of attorney fees under Lodestar. *In re Boddy*, 950 F.2d at 338. Where a case involves unusual and/or novel issues, a higher rate of compensation may be appropriate than a routine or repetitive case. *See In re McClanahan*, 137 B.R. at 75–76 ("[F]ew local attorneys involved in [several large Chapter 11's] charge an hourly rate as high as [the rate charged by the chapter 13 attorney requesting the fee] and few associate attorney [charge the rates requested by the debtor's attorney in their fee application]. It should also be noted that the services rendered in these "mega cases" require an attorney to practice on a much more sophisticated level than that which is required in a routine Chapter 13 case.") This factor however does not mean that Chapter 13 practitioners should always be compensated at an hourly rate less than Chapter 11 practitioners. Rather, this factor recognizes that in all types of bankruptcy proceedings there is a wide range of problems and difficulty which may be encountered and that the most difficult and complex cases should be compensated at a higher rate than a routine matter.

### 5) *Whether the Specific Task is Performed by the Appropriate Professional/Non Professional*

■■■■ In *In re J.F. Wagner's Sons Co.*, 135 B.R. at 267 this Court held that only certain services rendered by attorneys to debtors are compensable as legal services. Ministerial and/or clerical services provided by professionals to debtors should not be compensable at the same hourly rate as "truly legal services". *In re Automobile Warranty Corp.*, 138 B.R. 72, 78 (Bkrtcy. D.Col.1991). This Court shall not attempt to draw a bright line of distinction between legal services, "mixed" legal-ministerial services and pure clerical ministerial services, but instead adopts the case by case approach to the evaluation of this issue. *In re Seneca Oil Co.*, 65 B.R. at 902.

### 6) *Billing Judgment*

■■■■ In the real world, most law firms make adjustments to their bills to their nonbankrupt clients to eliminate unproductive time or to reduce hours on productive projects where the total amount billed would be unreasonable in relation to the economic value of the matter in question. As noted by the Supreme Court in *Hensley v. Eckerhort*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> [attorneys] should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary; just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here.'

*Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939 ("quoting *Copeland v. Marshall*, 641 F.2d 880 (D.C.Cir.1980)). In the area of determining appropriate hourly rates attorneys should be willing to reduce hourly rates in appropriate circumstances. *See In re Automobile Warranty Corp.*, 138 B.R. 72 (Bkrtcy.D.Col.1991); *In re Great Sweats, Inc.*, 113 B.R. 240 (Bkrtcy.E.D.Va. 1990). This billing judgment should be revealed to the Court by disclosing any reduction in requested hourly rates. *National Assoc. of Concerned Veterans v. Sec. of Defense*, 675 F.2d 1319 (D.C.Cir.1982).

### B.) Reasonable Hours Expended

■■■■ The second component of the Lodestar method of fee calculation involves a

determination of reasonable hours expended in a bankruptcy case. *In re Boddy*, 950 F.2d at 334. This element of the Lodestar award must be reviewed by Bankruptcy Courts with even greater care in order to ensure that attorneys are not compensated for their slowness or for any time spent on projects of little or no benefit to the estate.

### 1) *Type of Issues Involved in Bankruptcy Case*

 The initial consideration for courts in determining whether reasonable hours were expended on legal matters is what issues confronted a debtor's counsel in a given case. Far fewer hours will be expended in a routine, consumer Chapter 13, than in a typical Chapter 11 or even a Chapter 13 which has significant problems with taxes, involves a debtor's sole proprietorship or has several disputed claims. The review of this factor is to be made on a case by case determination and is clearly within the sound discretion of the court. *In re Paster*, 119 B.R. 468 (E.D.Pa.1990).

### 2) *Time Spent on Comparable Matters*

 A second factor important to determining what are reasonable hours under Lodestar is what amount of time is expended in similar matters by other comparable counsel. *Matter of Malewicki*, 142 B.R. 353, 358 (Bkrtcy.D.Neb.1992); *In re Patronek*, 121 B.R. 728 (Bkrtcy.E.D.Pa. 1990). This Court does not mean to establish universal standards of hours necessary for particular bankruptcy tasks, but rather believes that this factor should be used in cases where there is an unexplained and/or significant deviation from the established norm.

### 3) *Characteristics of the Debtor*

 While rarely discussed, a highly important aspect in determining hours reasonably expended in a bankruptcy proceeding is the individual characteristics of a debtor. Certain debtors, by their very nature require more litigation and negotiation to succeed in a bankruptcy case than others. For example, a debtor in a Chapter 13 who operates a business and has commercial financing with a bank might well require more work than a typical consumer Chapter 13 debtor who is a wage earner. The business Chapter 13 debtor may require cash collateral orders, post petition financing orders and numerous pleadings to allow his business to continue to operate, while the consumer Chapter 13 debtor will rarely require more than a confirmable plan for a successful case. Further, in larger Chapter 11 cases, the sheer magnitude of the assets, debts and financing involved may lead to more hours being expended than would be expended in a similar but much smaller case. Due diligence is a factor of legal life and cannot be ignored in the bankruptcy fee context. However such size factors will not have a great impact in Chapter 13 cases given the current debt limits imposed by the Bankruptcy Code.

### 4) *Litigation Issues*

 A fourth factor to be considered in determining whether the hours claimed by debtor's counsel are reasonable concerns factors related to how the matter must be litigated. As noted by many courts, debtor's counsel should not be rewarded for engaging in needless litigation. *See In re Leonard Jed Co.*, 103 B.R. 706 (Bkrtcy. D.Md.1989); *In re Wildman*, 72 B.R. 700 (Bkrtcy.N.D.Il.1987). By the same logic, debtor's counsel should not be penalized by a court when counsel was forced by either circumstances (i.e. a case involving serious factual disputes) or opposing counsel to engage in extra litigation. While settlement and cooperation are highly encouraged in bankruptcy cases, this Court recognizes that there will be times that a debtor will be required to engage in protracted litigation merely to protect its interests. This factor, by necessity, shall be considered on a case by case basis.

### 5) *Attorney Fee Application Time*

 Although there is some controversy on this issue, this Court shall permit awards of attorney fees for time spent on the preparation and litigation of fee applications under 11 U.S.C. § 330. As a gener-

al guideline however, this Court shall not approve attorney fees related to the preparation of fee applications where those fees exceed 5% of the total requested fees, absent a showing of exceptional circumstances. *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir.1986). In most cases fee application time should be much less than 5% of the total requested fees.

### 6) *Billing Judgment*

■ As discussed above, billing judgment must be exercised by debtor's counsel in determining the "reasonable number of hours" for which fees will be requested under Lodestar. *See In re Associated Grocers of Colorado, Inc.*, 137 B.R. 413 (Bkrtcy.D.Col.1990); *In re Gilead Baptist Church of Taylor*, 135 B.R. 38 (Bkrtcy. E.D.Mich.1991); *In re Wildman*, 72 B.R. 700 (Bkrtcy.N.D.Ill.1987). "In order to clearly demonstrate that the appropriate billing judgment has indeed been exercised counsel in their fee request should setforth what time has been written off." *In re Automobile Warranty Corporation*, 138 B.R. 72 (Bkrtcy.D.Col.1991). While admittedly this is a highly subjective factor in determining reasonable hours, it must be necessarily considered in order to ensure that the fees charged to a debtor are no greater than those charged to a debtor counsel's nonbankruptcy clients. *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 583 (Bkrtcy.D.Utah 1985).

### C.) Factors to be Considered in Global Modifications to Lodestar Fee Awards

■ In the cases of *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II "*); *Pennsylvania v. Delaware Valley Citizens Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I "*) and *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court has indicated, particularly in the area of premiums, bonuses or other fee enhancements, that global modifications of Lodestar awards should be rarely made because the factors underlying the calculation of a Lodestar figure would generally subsume any special factors which would support fee enhancement. In *Delaware Valley II* the Supreme Court indicated that fee enhancements should only be awarded in the most exceptional and rare of cases. *Delaware Valley II*, 483 U.S. at 730, 107 S.Ct. at 3089. While not directly addressing the issue, from a fair reading of the *Delaware Valley* and *Blum* cases, it is clear that global reduction in Lodestar awards should also be used by courts in only exceptional cases. However, there are still certain factors which, while cited in numerous cases as impacting on fee awards, do not directly effect either hourly rates or hours expended in Lodestar calculations and can only be appropriately used in the context of global modifications. These factors should rarely be used independently to justify a global modification of a Lodestar award.

### 1) *Compliance with Employment and Fee Request Requirements*

■ Perhaps the most common factor used by courts in bankruptcy to "globally" modify a Lodestar fee award is counsel failure to abide by the employment requirements of 11 U.S.C. §§ 327, 328, 330 and 331 by either failing to timely make application for employment, or having conflicts of interest which were either undisclosed or unknown at the time of employment. *In re Pierce*, 53 B.R. 825 (Bkrtcy.D.Minn.1985), *aff'd*, 809 F.2d 1356 (8th Cir.1987); *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984); *In re Twinton Properties Partnership*, 27 B.R. 817 (Bkrtcy. M.D.Tenn.1983). While such results are often harsh they do ensure early disclosure of potential conflicts and control fee disbursements. *In re Vlachos*, 61 B.R. 473 (Bkrtcy.S.D.Ohio 1986).

### 2) *Opportunity Costs; Time Taken Away from Other Matters*

■ While often cited as a factor in determining fee awards, in the context of a bankruptcy proceeding this factor should not be considered outside the largest and most complex cases. *See generally Harman v. Levin*, 772 F.2d 1150 (4th Cir.1985);

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

### 3) *Undesirability of the Case*

■ As with the time or opportunity cost factor discussed above, this factor affects fee awards primarily in nonbankruptcy cases. *Harman*, 772 F.2d at 1152 n. 1 It would be highly unlikely that a bankruptcy proceeding could be so undesirable in the local legal community that this factor would ever be used in calculating an award of attorney's fees in a Bankruptcy case.

### 4) *Contingent Nature of the Compensation*

■ In *Delaware Valley II*, the U.S. Supreme Court ruled that the contingency of payment alone could not, in and of itself justify a fee enhancement. 483 U.S. at 725, 107 S.Ct. at 3086. However this factor can be used with other factors or in other contexts to modify fee awards. *See Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

### 5) *Results Obtained*

■ Perhaps the most difficult area for a court to review in awarding fees concerns to what extent the results obtained should be used to modify an award of fees particularly in cases where compensation is sought for attorney fees related to totally unsuccessful projects. *See In re Roger J. Au & Son, Inc.*, 114 B.R. 482 (Bkrtcy.N.D.Ohio 1990); *In re Baldwin–United Corp.*, 79 B.R. 321 (Bkrtcy.S.D.Ohio 1987); *In re Tamarack Trail Co.*, 25 B.R. 259 (Bkrtcy.S.D.Ohio 1982). However while this factor may be considered it will clearly not control either the question of whether fees should be awarded or to what amount of fees should be awarded. Only in the most extreme cases where attorneys have expended significant time and effort on matters which had little or no chance of benefiting the debtor's estate should major reductions in fees be made. By the same token, fee enhancements for highly successful results should also be rarely awarded.

### D.) Application to Case Before the Court

In the present case, counsel for the debtors, Roy and Starla Atwell, has requested compensation for 15 hours of work at the rate of $135.00 per hour or $2025.00 and expenses in the amount of $38.30. This Court has reviewed under the above guidelines and reaches the following conclusions:

### 1) *Hourly Rate*

■ Debtor's counsel is a skilled bankruptcy practitioner who provided quality services in this fairly routine case. No particularly novel or unusual issues were raised in this case. The only unusual matters in the file were a motion for the continuance of the 341 meeting and an amendment to the Chapter 13 plan filed in response to a few minor questions raised by the Court. The hourly rate of $135.00 is well outside the comparable rate requested in most routine Chapter 13 cases and is more in line with the hourly rates charged by practitioners in large Chapter 11's. Given the nature of the case, the issues presented and other factors discussed in detail above this Court shall award debtor's counsel fees at an hourly rate of $100.00 instead of the requested $135.00. The $100.00 is, this Court believes on the higher end of the spectrum for reasonable hourly rates in routine Chapter 13 and justly reflects the above average performance of debtor's counsel.

### 2) *Hours Expended*

■ The Court has reviewed the hours which the debtor has requested compensation for and finds them to be extremely detailed and comprehensive. However it is equally evident that debtor's counsel billed for every tenth of an hour spent on this bankruptcy and that little, if any billing judgment was used in reviewing the hours billed requested in the application. The characteristics of the debtor and the nature of the litigation in this case further indicate that the time worked on this case was at the upper end of reasonableness. However given the fact that numerous claims had to be reviewed and various pleadings filed would be inappropriate for large reductions

of requested time be made by the court. Therefore this Court shall only slightly reduce the requested time to 13.00 hours to reflect the overinclusive character of the hours claimed by the debtor's counsel and the fact that attorney fee requested for time spent on the fee application exceeded the 5% limit of *Coulter.*

### E.) Global Modifications

This routine case has no factors present which would dictate that either an upward or downward global modification to the Lodestar calculation be made. Therefore an award of $1,300.00 in attorney fees and expenses of $38.20 in this case shall be made by the Court.

### CONCLUSION

This opinion represents a further attempt by this Court to define how awards of attorney fees shall be calculated under the Lodestar calculations required by 11 U.S.C. § 330 as interpreted by the Sixth Circuit in *In re Boddy,* 950 F.2d 334 (6th Cir.1991). As in this Court's previous opinions of *Wagner's* and *Belknap,* this opinion strives to offer a general guideline for Chapter 13 fee applications.

By separate document an order reflecting these findings shall be entered by the Court.